## RENCSOK v RENCSOK

1. Conspiracy—Civil Conspiracy—Circumstantial Evidence.

    Evidence used to prove a civil conspiracy may be circumstantial but must nonetheless support a reasonable inference that two or more persons planned or acted in concert to accomplish an unlawful end.

2. Appeal and Error—Findings of Fact—Court Rules.

    An appellate court will not disturb the findings of fact made by the trial court unless convinced after a thorough review of the record that those findings were clearly erroneous (GCR 1963, 517.1).

3. Conspiracy—Fraud—Findings of Fact.

    The findings of the trial court that the plaintiff's signature on a warranty deed was not forged and that the evidence presented failed to support a reasonable inference that defendants conspired to deprive plaintiff of her marital residence were not clearly erroneous where the plaintiff did not produce any expert testimony regarding the invalidity of her signature on the warranty deed, the defendants were for the most part strangers to one another, and looking at the record as a whole the actions of the defendants amounted to a series of isolated transactions unconnected by any plan or scheme to defraud the plaintiff; therefore, a judgment of no cause of action against the plaintiff in her suit for conspiracy to fraudulently deprive her of the real estate was proper.

4. Conspiracy—Fraud—Automobiles—Security  Interest—Appeal and Error.

    In a suit alleging that her defendant husband and his mother conspired to deprive her fraudulently of an automobile the trial court did not err in determining that there was no conspiracy against the plaintiff wife where title to the automobile had

References for Points in Headnotes

[1] 16 Am Jur 2d, Conspiracy, § 59.
[2] 5 Am Jur 2d, Appeal and Error, § 839.
[3] 37 Am Jur 2d, Fraud and Deceit, § 28.
[4] 7 Am Jur 2d, Automobiles and Highway Traffic, § 37.

been transferred by the husband to his mother as security for a loan from her, and where he was permitted to continue to drive the automobile, since the mother's security interest in the vehicle was not rendered invalid or fraudulent by her son's continued use of the vehicle; therefore, the trial court properly entered a judgment on the counterclaim of the mother for damages where he found the evidence to be that the plaintiff wrongfully permitted the vehicle to be destroyed (MCLA 440.9205).

Appeal from Wayne, Theodore R. Bohn, J. Submitted Division 1 February 8, 1973, at Detroit. (Docket No. 12011.) Decided April 23, 1973. Leave to appeal denied, 390 Mich 751.

Complaint by Mary Ellen Rencsok against Joel A. Rencsok and others for fraud. Default judgment against defendant Joel A. Rencsok. Judgment in favor of the other defendants. Judgment in favor of defendant Rose Rencsok against plaintiff on a counterclaim. Plaintiff appeals. Affirmed.

*Eliot Charlip,* for plaintiff.

*George Stone,* for defendant Rose Rencsok.

*Archer, Kenney & Wilson (Zemke, Lustig & Leiken, P. C.,* of counsel), for defendant Kenneth R. Boddy.

*Donald Wm. Sargent,* for defendant Leonard L. Lubnik.

*Moore, Sills, Poling & Wooster, P. C.,* for defendants Donald Goldman, B. F. Chamberlain Real Estate Company, William Costa, and Helen Costa.

Before: T. M. BURNS, P. J., and BASHARA and ADAMS,* JJ.

---

* Former Supreme Court Justice, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

T. M. Burns, P. J. While a divorce action was pending between the plaintiff, Mary Ellen Rencsok, and her husband, defendant Joel Rencsok, plaintiff brought the instant suit alleging that her signature was forged to a warranty deed which conveyed the marital residence to defendant Boddy, who in turn conveyed the premises to defendants Costa, and that the defendants conspired with her husband and each other to fraudulently deprive her of certain real and personal property. The case at bar centers upon two pieces of property, namely the marital home and a 1964 Corvette automobile which plaintiff's husband transferred to his mother, defendant Rose Rencsok.[1]

After a trial was held on the merits, the court sitting without a jury found that plaintiff's signature on the warranty deed was not forged and that plaintiff had failed to sustain her burden of proof to establish a conspiracy between the defendants. Accordingly, a judgment of no cause of action was entered in favor of the defendants[2] and a judgment of $2,650 was entered against the plaintiff on a counterclaim filed by defendant Rose Rencsok. Plaintiff appeals.

Even though evidence used to prove a civil conspiracy may be circumstantial in nature, such evidence must nonetheless support a reasonable inference that two or more persons planned or acted in concert to accomplish an unlawful end. *Veriden v McLeod,* 180 Mich 182 (1914); *Bahr v Miller Bros Creamery,* 365 Mich 415, 421 (1961).

---

[1] Although the instant suit was consolidated with the divorce action, both suits were tried separately.

[2] It should be noted, however, that since plaintiff's husband, defendant Joel Rencsok, failed to file an answer to the conspiracy complaint, a default judgment was entered against him which was affirmed at 16 Mich App 643 (1969).

In addition where, as here, the trial court sits without a jury and is consequently in a better position to pass upon the credibility of witnesses who appear before it, we will not disturb the findings of fact made by the trial court unless convinced after a thorough review of the record that those findings were clearly erroneous. GCR 1963, 517.1.

With the foregoing principles in mind, we now turn to an examination of the record. For the sake of clarity, the controversy over the marital home and the automobile will be treated separately.

### I. *The Marital Home*

The evidence adduced at trial may be summarized as follows: plaintiff and defendant Joel Rencsok were married on December 1, 1962. Subsequently, Joel purchased a house and lot to be used as the marital residence and took title in his name alone. Four days later the plaintiff and her husband executed a mortgage on this property.

In May of 1966 Joel expanded his electrical motor repair business and was in need of capital. He borrowed $10,000 from his friend, defendant Boddy. The plaintiff and Joel executed a promissory note to Boddy to cover the loan. The borrowed funds were invested in the business.

A short time later, marital difficulties erupted between the plaintiff and Joel and on December 25, 1966, the plaintiff left the marital home.

On May 27, 1967, a warranty deed subject to the mortgage noted earlier was executed conveying the marital home to defendant Boddy. The deed bore the signature of defendant Joel Rencsok and what was purported to be the signature of his wife,

plaintiff Mary Ellen Rencsok. Defendant Boddy related that he was told the deed was executed and recorded to secure the $10,000 he had loaned the Rencsoks.

Approximately one year later defendants Joel Rencsok and Boddy listed the marital residence for sale with the B. F. Chamberlain Real Estate Company. On July 27, 1967, the property was sold to defendants Costa and defendant Boddy executed a warranty deed conveying the premises to the Costas.

On October 27, 1967, plaintiff filed a suit for divorce in Wayne County Circuit Court. The divorce was granted on May 5, 1969.

Although the plaintiff, Mary Ellen Rencsok, testified at trial that she did not sign the warranty deed conveying the marital residence to defendant Boddy and that her signature thereon was a forgery, she did not offer the testimony of a handwriting expert to substantiate this allegation. However, plaintiff did testify that on the date the warranty deed was executed she was working as a cashier at a supermarket.

An employee in charge of personnel records at the supermarket where plaintiff was employed took the stand and testified from the plaintiff's time card that on May 27, 1967, (the date the warranty deed was executed to defendant Boddy) plaintiff began work at 10:55 a.m., left work at approximately 3:15 p.m., returned at 3:45 p.m., and finally left for the day at 7 p.m. On cross-examination the witness admitted that it would be possible for an employee to leave work without the departure being reflected by the time card and that other employees had been discharged for doing so in the past.

Defendant Lubnik, an attorney, testified that he

had represented defendant Joel Rencsok and had prepared the warranty deed conveying the marital premises to defendant Boddy. He further explained that on the day the warranty deed was executed, Joel appeared at his office around noon with a woman he (Joel) identified as Mary Ellen Rencsok and that both parties signed the deed. Defendant Lubnik witnessed the deed and acknowledged their signatures as a notary public. Defendant Lubnik was not certain of the identity of the woman who accompanied Joel to his office and signed the deed; however, he did state he had seen her before at Joel's place of business. It should be noted here that the plaintiff testified that she had been to Joel's shop on several occasions.

Defendant Goldman, a real estate salesman for the B. F. Chamberlain Real Estate Company, testified that except for the real estate transaction, he had no contacts with the other defendants. He also stated that per plaintiff's attorney's request he had informed him four days before the sale was closed that the Costas had tendered an offer for the marital home.

The record discloses that the Costas were not acquainted either socially or in business with the other defendants. The Costas paid $17,000 for the premises and assumed the balance of the mortgage which amounted to over $12,000. It is not claimed that the amount paid by the Costas was inadequate or otherwise deficient. Defendant Boddy as the grantor received the $17,000, kept $5,000 for the balance owing on the Rencsoks' $10,000 note and remitted the remaining $12,000 to Joel Rencsok.

On the basis of plaintiff's demeanor on the witness stand the trial court gave no credence to her testimony. In the words of the trial court: "Her

[plaintiff's] bias against her husband and the interest in the outcome of the case appeared to be of more concern than her interest in truth". Moreover, after comparing the plaintiff's signature on the warranty deed with her admittedly valid signatures appearing on various documents and exhibits filed in the case and after thoroughly reviewing the testimony and evidence presented by both sides, the trial court found that plaintiff's signature on the warranty deed was not forged and that the actions of the defendants were totally unrelated to the other and thus the evidence failed to support a reasonable inference that the defendants conspired to deprive plaintiff of the marital residence. In short the trial court ruled that the plaintiff had failed to establish any conspiracy between the defendants by a preponderance of the evidence.

We have likewise carefully reviewed the voluminous record in the case at bar. As previously recounted, plaintiff did not produce any expert testimony regarding the validity of her signature on the warranty deed to defendant Boddy. However, after comparing the signature on the deed with plaintiff's other signatures appearing in the record, we are persuaded that the trial court did not err in determining that plaintiff's signature on the deed was genuine. In addition, the defendants were for the most part strangers to one another, save for Joel Rencsok and defendant Boddy. Looking at the record as a whole we are convinced that the actions of the defendants amounted to a series of isolated transactions unconnected by any plan or scheme to defraud the plaintiff.

We hold, therefore, that the findings made by the trial court were not clearly erroneous and do not warrant reversal.

## II. *The Automobile*

Plaintiff asserts that defendant Joel Rencsok and his mother, defendant Rose Rencsok, conspired to fraudulently deprive her of the 1964 Corvette automobile. The record belies this contention.

Early in 1967 defendant Joel Rencsok required additional funds to purchase machinery for his electric motor repair business. On February 1, 1967, Joel's mother loaned him $2,650. Title to the Corvette automobile was transferred on the same day to Rose Rencsok as security for the loan. Rose Rencsok permitted Joel to continue to drive the automobile.

In July of 1967 plaintiff removed the vehicle from Joel's garage and parked it near her home. The car was left unprotected for several months and was largely dismantled by car strippers. Subsequently, the police hauled the vehicle away.

The trial court again could find no conspiracy between Joel and his mother to fraudulently deprive the plaintiff of the automobile, and as a consequence of plaintiff's actions, entered a $2,650 judgment against the plaintiff on defendant Rose Rencsok's counterclaim for destruction of the automobile. The record supports the trial court's action.

We find, as did the trial court, that the transfer of title to defendant Rose Rencsok was part of a legitimate business transaction, *i.e.,* security for a loan. Moreover, we note that Rose Rencsok's security interest in the automobile was not rendered invalid or fraudulent by virtue of the fact that she allowed Joel to continue to use the vehicle. See MCLA 440.9205; MSA 19.9205. Title to the auto was in defendant Rose Rencsok's name as security

for a loan and plaintiff wrongfully permitted the vehicle to be destroyed. Therefore, the findings of the trial court were not clearly erroneous and the entry of the judgment on the counterclaim was proper.

For the reasons delineated above, the judgment of the trial court is affirmed.

All concurred.