ZMIJA v BARON

Docket No. 52877. Submitted November 10, 1981, at Detroit.—Decided
September 21, 1982. Leave to appeal applied for.

Plaintiff, John Zmija, brought an action against defendants, J.
Baron, H. Chylinski, D. Misiak, and L. Pietrzak, Hamtramck
police officers, for assault and battery, false arrest and false
imprisonment, malicious prosecution, and conspiracy. Defen-
dants, J. Sitek, Acting Chief of the Hamtramck Police Depart-
ment, and D. Rojek, were thereafter joined as defendants in the
conspiracy count. The City of Hamtramck was also added as a
defendant under theories of *respondeat superior* and affirma-
tive negligence. The jury in the Wayne Circuit Court, Thomas
Roumell, J., found in favor of the plaintiff on each count as to
each defendant. The jury returned special verdicts under each
theory, with a breakdown of damages due plaintiff from each
defendant. These amounts were aggregated and a general
verdict was entered in the amount of $28,000. Defendants
appeal the judgment entered pursuant to this verdict. Defen-
dants also appeal the award to plaintiff of attorney fees in the
amount of $8,231.66. On appeal, the defendant city argues that

REFERENCES FOR POINTS IN HEADNOTES

[1] 57 Am Jur 2d, Municipal, School, and State Tort Liability §§ 90,
246.

[2, 3] 15 Am Jur 2d, Civil Rights §§ 17, 26.

[3] 57 Am Jur 2d, Municipal, School, and State Tort Liability § 250.

[4] 15 Am Jur 2d, Civil Rights §§ 16, 17.

[5] 5 Am Jur 2d, Appeal and Error § 886.
    75 Am Jur 2d, Trial §§ 482, 483.

[6, 14] 16 Am Jur 2d, Conspiracy §§ 50, 68.

[7] 16 Am Jur 2d, Conspiracy § 63.
    60 Am Jur 2d, Perjury § 75.

[8] 75 Am Jur 2d, Trial § 610.

[9] 5 Am Jur 2d, Appeal and Error § 891.
    75 Am Jur 2d, Trial § 908.

[10] 52 Am Jur 2d, Malicious Prosecution §§ 94, 104.

[11] 5 Am Jur 2d, Appeal and Error § 943.

[12] 15 Am Jur 2d, Civil Rights § 15.
    20 Am Jur 2d, Costs § 82.

[13] 16 Am Jur 2d, Conspiracy § 49.

the trial court erred in denying its motion for a directed verdict on plaintiff's *respondeat superior* theory. The city also challenges the jury's finding that the city was liable to plaintiff under 42 USC 1983. Defendants Sitek and Rojek each challenge the trial court's denial of their motions for a directed verdict on the conspiracy allegation against them. Defendants also allege errors in the trial court's refusal to give a requested standard jury instruction and several other instructional errors. *Held:*

1. The trial court did not err in denying defendant city's motion for a directed verdict on plaintiff's *respondeat superior* theory. An intentional tort by the city's police officers is not committed in the exercise or discharge of a governmental function within the meaning of the governmental tort liability act.

2. The jury instructions did not reflect the appropriate "deliberate indifference" standard of liability but permitted a recovery against the defendant city under 42 USC 1983 based on a finding of simple negligence. The $5,000 "affirmative negligence" award against the city is, therefore, vacated.

3. Municipalities are immune from punitive damages under 42 USC 1983.

4. The trial court did not err in denying defendant Sitak's motion for a directed verdict on the conspiracy allegation against him since reasonable minds could differ as to plaintiff's claim that Sitek was involved in a conspiracy to obstruct justice. The circumstantial evidence was sufficient to support a reasonable inference of a conspiratorial design.

5. The trial court erred in denying defendant Rojek's motion for a directed verdict on the conspiracy allegation against him. The Court of Appeals, therefore, ordered entry of a directed verdict of no cause of action as to him. Since he was added as a defendant solely because of his deposition testimony, for which he was immune, and since there is no claim or evidence that he was in any way involved in the alleged conspiracy prior to the giving of his deposition testimony, he should have been dismissed.

6. The trial court did not abuse its discretion in refusing to give a requested standard jury instruction with reference to the plaintiff's failure to produce the testimony of a psychiatrist who had examined plaintiff at the request of his trial counsel. Plaintiff's proper assertion of his attorney-client privilege constituted a reasonable excuse for failure to present the testimony.

7. The jury was improperly permitted to include "exemplary"

damages in its initial assessment of malicious prosecution damages and to treble the entire actual (including "exemplary") damage determination, thus improperly awarding double "exemplary" damages. The four $1,500 jury awards against each of the malicious prosecution defendants are, therefore, vacated. On remand to the circuit court, plaintiff shall have the option of electing to proceed to a new trial on the malicious prosecution count, but limited only to the issue of damages, or of filing a written consent to a judgment in the amount of $500 as to each of the four malicious prosecution defendants. Plaintiff's consent to the *remittiturs* shall be filed within ten days of the effective date of this opinion.

8. The trial court did not abuse its discretion in awarding attorney fees to plaintiff. However, since the 42 USC 1983 award against the city is vacated, this Court remands to the circuit court for a recalculation. The fact that plaintiff's § 1983 success was only partial does not automatically preclude an assessment in his favor against those defendants found liable to him under § 1983. If plaintiff elects to retry his § 1983 claim against the city and he prevails, he may petition the circuit court for an additional allowance of reasonable attorney fees under 42 USC 1988.

Affirmed in part, reversed in part, and remanded.

D. F. WALSH, J., concurred with the majority but dissented from their conclusion that the denial of defendant Sitek's motion for a directed verdict was proper. He would hold that the circumstances proven by plaintiff did not naturally tend to support both of the necessary inferences which he sought to have the jury infer, first, that Sitek told an Identification Bureau officer to destroy the photo that Sitek had been requested to preserve and, second, that he did so as part of a preconceived concerted plan to prejudice plaintiff's rights. He would reverse the trial court's ruling as to defendant Sitek and enter a directed verdict of no cause of action as to him.

OPINION OF THE COURT

1. GOVERNMENTAL IMMUNITY — INTENTIONAL TORTS.

An intentional tort committed by police officers while employed by a city is not committed in the exercise or discharge of a governmental function within the meaning of the govermental tort liability act and the city, therefore, is not immune and may be held liable for the officer's intentional torts.

2. TORTS — LOCAL GOVERNMENTS — PERSONS — *RESPONDEAT SUPERIOR* — CIVIL RIGHTS — UNITED STATES CODE.

Local governments are "persons" for purposes of 42 USC 1983

actions; while a municipality cannot be held liable under § 1983
on a *respondeat superior* theory, the governmental body may
be sued directly under that statute where the action that is
alleged to be unconstitutional or illegal implements or executes
a policy or custom of that government (42 USC 1983).

3. TORTS — CIVIL RIGHTS — LOCAL GOVERNMENTS — POLICE —
   DELIBERATE INDIFFERENCE — UNITED STATES CODE.

   Although a city cannot be held liable for the simple negligent
   training of its police force, a city's citizens do not have to
   endure a "pattern" of past police misconduct before they can
   sue the city under the federal statute governing civil actions
   for deprivation of rights; if a municipality completely fails to
   train its police force, or trains its officers in a reckless or
   grossly negligent manner so that future police misconduct is
   almost inevitable, the municipality exhibits a "deliberate indif-
   ference" to resulting violations of a citizen's constitutional
   rights; in such a case, the municipality may fairly be termed as
   acquiescing in and implicitly authorizing such violations (42
   USC 1983).

4. TORTS — MUNICIPALITIES — PUNITIVE DAMAGES — CIVIL RIGHTS —
   UNITED STATES CODE.

   Municipalities are immune from punitive damages under the
   federal statute governing civil actions for the deprivation of
   civil rights (42 USC 1983).

5. APPEAL — DIRECTED VERDICTS.

   The Court of Appeals, in reviewing the granting of a motion for a
   directed verdict, is required to view the evidence, and all
   legitimate inferences emanating from that evidence, in a light
   most favorable to the nonmoving party; the motion is correctly
   granted if reasonable minds could not differ on the meaning of
   the evidence.

6. CONSPIRACY — EVIDENCE.

   A conspiracy may be established by circumstantial evidence and
   may be based on inference; direct proof of an agreement is not
   required nor is it necessary that a formal agreement be proven,
   since it is sufficient if the circumstances, acts, and conduct of
   the parties establish an agreement in fact.

7. ACTIONS — PERJURY — TORTS.

   There is no civil cause of action for the giving of perjured
   testimony in judicial proceedings, including deposition testi-
   mony, or for a conspiracy to give or procure false testimony; in

order to recover for a civil conspiracy, it is necessary to prove a separate, actionable tort.

8. TRIAL — JURY INSTRUCTIONS — STANDARD JURY INSTRUCTIONS.

Standard jury instructions are required to be given when requested where they are applicable and accurate; the determination of whether a requested standard instruction is applicable and accurately states the law is addressed to the trial court's discretion.

9. APPEAL — JURY INSTRUCTIONS — PRESERVING QUESTIONS — COURT RULES.

Failure to object at trial to a jury instruction generally precludes appellate review of that instruction; however, in limited circumstances, the Court of Appeals will review unobjected-to instructional errors in order to prevent manifest injustice (GCR 1963, 516.2).

10. DAMAGES — MALICIOUS PROSECUTION — GENERAL VERDICT — EXEMPLARY DAMAGES.

A plaintiff in a malicious prosecution action must elect to have the jury include within its actual damages determination the amount of "exemplary" damages suffered by the plaintiff and return a single general verdict, in which case the statutory trebling provision would not apply, or the plaintiff may choose to have the trebling of "non-exemplary" actual damages compensate for his "exemplary" damages in accordance with the trebling provision (MCL 600.2907; MSA 27A.2907).

11. APPEAL — DAMAGES — JUDGMENTS — NEW TRIAL — OPTION — REMITTITUR.

The Court of Appeals, where it finds that damages were erroneously determined, may remand to a circuit court and allow a plaintiff the option of proceeding to a new trial limited to the question of damages alone, or of filing a written consent to a *remittitur* of an amount determined by the Court of Appeals within ten days of the effective date of the Court of Appeals decision (GCR 1963, 527.6).

12. ACTIONS — ATTORNEY FEES — CIVIL RIGHTS ACTIONS — UNITED STATES CODE.

A trial court may, in its discretion, allow the prevailing party a reasonable attorney fee as part of the costs in an action to enforce the federal statute governing civil actions for the deprivation of civil rights; the fact that the party's success was only partial does not automatically preclude the assessment of

attorney fees against those defendants found liable to him (42 USC 1983, 1988).

Partial Concurrence and Partial Dissent by D. F. Walsh, J.

13. Conspiracy — Words and Phrases.

*A conspiracy is a combination of two or more persons, by some concerted action, to accomplish an unlawful purpose, or to accomplish a lawful purpose by unlawful means.*

14. Conspiracy — Circumstantial Evidence.

*Proof of a conspiracy is generally circumstantial, however, the circumstances must naturally tend to prove the common design and must be sufficient in themselves to satisfy the trier of fact of the existence of such common design; the circumstances must do more than create a mere suspicion of the existence of a conspiracy; the evidence must support a reasonable inference that the defendant acted with at least one other person to accomplish an unlawful end; circumstantial evidence is insufficient if the inference of a conspiratorial design is not reasonable, probable, and unstrained.*

*Patrick J. Bruetsch,* for plaintiff.

*Tyler & Canham, P.C.* (by *David M. Tyler* and *Michael J. Walter),* for defendants.

Before: R. M. Maher, P.J., and D. F. Walsh and D. C. Riley, JJ.

D. C. Riley, J. The facts in this case are adequately set forth in Judge Walsh's opinion. For the reasons stated in that opinion we concur in the resolution of all issues presented except the issue relating to the propriety of the trial court's denial of defendant Sitek's motion for a directed verdict. As to that issue we disagree with Judge Walsh and find no error in the denial of that motion. In a recent case, a panel of this Court accurately and succinctly set forth the standard for reviewing a motion for a directed verdict.

"In reviewing a motion for a directed verdict, this

Court is required to view the evidence, and all legitimate inferences emanating from that evidence, in a light most favorable to the nonmoving party. If reasonable minds could not differ on the meaning of the evidence the motion is correctly granted." *Miller v Great Lakes Steel Corp*, 112 Mich App 122, 125; 315 NW2d 558 (1982), citing *Bosca v J A Ferguson Construction Co*, 79 Mich App 177; 261 NW2d 249 (1977).

Thus, the question becomes whether reasonable minds could differ as to plaintiff's claim that Sitek was involved in a conspiracy to obstruct justice.

Plaintiff presented evidence at trial establishing that plaintiff's attorney wrote to Sitek, Acting Chief of Police, requesting that plaintiff's mug shot be removed from the file and either placed in the department's nonpublic file or sent to the attorney's office. The letter specifically requested that Sitek not destroy the photo because it was needed for impending litigation. Despite Sitek's having received this letter, the photo was destroyed. In addition, there is testimony that Sitek had a discussion with an officer at the Identification Bureau concerning plaintiff's request.

Based upon this evidence, it would seem that reasonable persons could honestly reach different conclusions as to whether the photograph was destroyed accidentally or with the purpose of destroying evidence which plaintiff had expressly stated he intended to use at trial. One could reasonably infer, based on the circumstantial evidence, that it had been something more than an accident. Therefore, the trial court did not err in denying defendant Sitek's motion for a directed verdict.

Finally, it is of no consequence that the evidence against Sitek was largely circumstantial. It must be kept in mind that proof of a conspiracy is

generally circumstantial in nature. *Bahr v Miller Bros Creamery,* 365 Mich 415, 421; 112 NW2d 463 (1961). In our recent decision in *Vincent v Raglin,* 114 Mich App 242, 250; 318 NW2d 629 (1982), we quoted, with approval, the following language from *People v Atley,* 392 Mich 298, 311; 220 NW2d 465 (1974):

"Direct proof of agreement is not required, nor is it necessary that a formal agreement be proven. It is sufficient if the circumstances, acts, and conduct of the parties establish an agreement in fact.

"Furthermore, conspiracy may be established, and frequently is established by circumstantial evidence, and may be based on inference." (Citations omitted.)

In the case at bar, the circumstantial evidence was sufficient to support a reasonable inference of a conspiratorial design. We hold that the trial court did not err in denying defendant Sitek's motion for a directed verdict.

Affirmed in part, reversed in part, and remanded for proceedings consistent herewith. We retain no jurisdiction. No costs, neither party having prevailed in full.

R. M. Maher, P.J., concurred.

D. F. Walsh, J. *(concurring in part, dissenting in part).* Plaintiff John Zmija sued defendants Baron, Chylinski, Misiak, Pietrzak, Sitek, Rojek, and the City of Hamtramck on various theories. Defendants Baron, Chylinski, Misiak, and Pietrzak were sued for assault and battery, false arrest and false imprisonment, malicious prosecution, and conspiracy. Defendants Sitek and Rojek were joined as defendants in the conspiracy count. Defendant city was sued under theories of *respondeat superior*

and "affirmative negligence". This latter theory was based on the city's alleged liability to plaintiff under 42 USC 1983.[1] The conspiracy count against the individual defendants was also based, at least in part, on violation of 42 USC 1983.

The jury found in favor of plaintiff on each count as to each defendant. The jury returned special verdicts under each theory, with a breakdown of damages due plaintiff from each defendant. These amounts were aggregated and a general verdict was entered in the amount of $28,000. Defendants appeal the judgment entered pursuant to this verdict. They also appeal the award to plaintiff of attorney fees in the amount of $8,231.66 pursuant to 42 USC 1988.

This lawsuit arose out of a 1972 altercation between plaintiff and defendants Baron, Chylinski, Misiak, and Pietrzak. On December 25, 1972, these defendants, Hamtramck police officers, arrested plaintiff and charged him with being drunk and disorderly and with assault and battery. The former charge was eventually dropped. In May, 1973, plaintiff was acquitted by a jury of the assault and battery charge.

In November, 1974, plaintiff filed a complaint against these four defendants, seeking damages for assault and battery, false arrest and false imprisonment, malicious prosecution, and conspiracy.

In a March, 1976, letter to Lieutenant John Sitek, Acting Chief of the Hamtramck Police Department, plaintiff's attorney asked that a mug shot of plaintiff, taken when plaintiff was booked

---

[1] "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. * * *"

on the December, 1972, charges, be removed from
the department file. He requested that the photo-
graph be sent to him or that it be placed in the
department's nonpublic file. The letter informed
Sitek that the photograph showed the results of
the beating which plaintiff had suffered at the
hands of the four officers whom plaintiff was suing.
The letter concluded, "I expect, therefore, that you
will not destroy it [i.e., the photograph] but will
retain it until subpoenaed by me along with the
other records relating to his arrest and prosecu-
tion". Instead of retaining the photograph, an
officer in the Identification Bureau shredded it
beyond repair. When Sitek discovered this, he
ordered that the shreds be sent to plaintiff's attor-
ney.

In May, 1977, Daniel Rojek was deposed. He
testified that he had been with plaintiff on Decem-
ber 25, 1972. According to Rojek, plaintiff had held
a gun on him. He had reported this in person to
the Hamtramck Police Department. Rojek was a
Hamtramck police officer from January, 1977, to
September, 1977. He had not been an officer at the
time of the 1972 incident.

Plaintiff filed an amended complaint in Septem-
ber, 1977. Rojek and Sitek were added as defen-
dants. Plaintiff alleged that these defendants and
the original four defendants had engaged in a
conspiracy against him. Plaintiff also added the
City of Hamtramck as a defendant and alleged the
city's liability, under the doctrine of *respondeat
superior,* for the acts of the police officers. In
addition, plaintiff alleged that defendant city's
police department had no formal training for its
officers, no formal system for the regular evalua-
tion of the quality of its officers' performance, and
a system of promotion based solely on the results

of a civil service examination. Based on these alleged inadequacies in the police department, plaintiff sought damages from defendant city for "affirmative negligence" under 42 USC 1983.

I

Defendant city first argues that the trial court erred in denying its motion for a directed verdict on plaintiff's *respondeat superior* theory. The city argues that it is not liable for the intentional torts of its employees, the individual police officer defendants. On the authority of *McCann v Michigan,* 398 Mich 65; 247 NW2d 521 (1976), and *Lockaby v Wayne County,* 406 Mich 65; 276 NW2d 1 (1979), we reject defendant city's argument.[2]

II

Defendant city also challenges the jury's finding that the city was liable to plaintiff under 42 USC 1983. The city argues that the jury instructions were inadequate in that they permitted a § 1983 recovery against the city based on a finding of simple negligence. We agree.

In *Monell v Dep't of Social Services of City of New York,* 436 US 658; 98 S Ct 2018; 56 L Ed 2d 611 (1978), the United States Supreme Court held that local governments are "persons" for purposes

---

[2] Any ambiguity in this regard following the release of *McCann* and *Lockaby* was resolved in *Wavro v Michigan,* 407 Mich 891; 284 NW2d 125 (1979), where the Supreme Court, citing *McCann* and *Lockaby,* reversed this Court's determination that the trial court had not erred in dismissing the plaintiff's claims against the State of Michigan and the Michigan State Police. The plaintiff in *Wavro* had sought damages for the intentional or negligent discharge of a firearm by a Michigan state police trooper and the intentional striking of the plaintiff by the trooper. The alleged offenses had taken place during the trooper's arrest of the plaintiff. (Unpublished per curiam opinion No. 77-5254, released April 19, 1979.)

of § 1983. While a municipality cannot be held liable under § 1983 on a *respondeat superior* theory, the governmental body may be sued directly under that statute where the action that is alleged to be unconstitutional or illegal implements or executes a policy or custom of that government.

The Supreme Court declined to set forth the full contours of municipality liability under § 1983. Numerous decisions subsequent to *Monell,* however, have indicated that proof of mere negligence is insufficient to recover from a local governmental body under § 1983. The applicable standard has been variously described as deliberate indifference, *Leite v Providence,* 463 F Supp 585 (D RI, 1978), gross negligence, *Hild v Bruner,* 496 F Supp 93 (D NJ, 1980), recklessness, *Spriggs v Chicago,* 523 F Supp 138 (ND Ill, 1981).

The instant plaintiff's § 1983 claim against the city was based on alleged inadequacies in the training and supervision of the city's police officers. In this context, we adopt the "deliberate indifference" standard of *Leite v Providence, supra,* and endorse that court's discussion of the standard:

"Although a city cannot be held liable for simple negligent training of its police force, the city's citizens do not have to endure a 'pattern' of past police misconduct before they can sue the city under section 1983. If a municipality completely fails to train its police force, or trains its officers in a reckless or grossly negligent manner so that future police misconduct is almost inevitable, the municipality exhibits a 'deliberate indifference' to the resulting violations of a citizen's constitutional rights. In such a case, the municipality may fairly be termed as acquiescing in and implicitly authorizing such violations. In light of the responsibility,

authority, and force that police normally wield, a municipality is fairly considered to have actual or imputed knowledge of the almost inevitable consequences that arise from the nonexistent or grossly inadequate training and supervising of a police force. If the plaintiff's injury results from the complete lack of training or grossly inadequate training of a police force, such an injury is not the result of mere negligence but the result of a deliberate and conscious indifference by the city. The training and supervising of these police officers must be so inadequate and the resulting misconduct so probable, that the city can fairly be considered to have acquiesced in the probability of serious police misconduct." 463 F Supp 590-591.

Because the jury instructions in this case did not reflect the appropriate standard of liability but permitted a § 1983 recovery against defendant city based on a finding of simple negligence, we vacate the $5,000 "affirmative negligence" award against the city.

In the event of a retrial of plaintiff's § 1983 claim against the city, the trier of fact shall not be permitted to consider an award of punitive damages. Municipalities are immune from punitive damages under 42 USC 1983. *Newport v Fact Concerts, Inc,* 453 US 247; 101 S Ct 2748; 69 L Ed 2d 616 (1981).

III

Defendant Sitek challenges the trial court's denial of his motion for a directed verdict on plaintiff's conspiracy allegation against him. I must dissent from the majority's conclusion that the denial of the motion was proper.

In considering defendant Sitek's motion, the court was obliged to view the testimony and all

legitimate inferences in a light most favorable to plaintiff. Denial of the motion was required if reasonable persons could have honestly reached different conclusions concerning the facts relating to defendant Sitek's liability. *Hayes v General Motors Corp,* 106 Mich App 188, 192; 308 NW2d 452 (1981).

A conspiracy is a combination of two or more persons, by some concerted action, to accomplish an unlawful purpose, or to accomplish a lawful purpose by unlawful means. *Fenestra, Inc v Gulf American Land Corp,* 377 Mich 565, 593; 141 NW2d 36 (1966).

In affirming the trial court's denial of defendant Sitek's motion for a directed verdict, the majority correctly notes that proof of a conspiracy is generally circumstantial. *Bahr v Miller Bros Creamery,* 365 Mich 415; 112 NW2d 463 (1961). The circumstances, however, must naturally tend to prove the common design and must be "sufficient in themselves to satisfy [the trier of fact] of the existence of such common design". *Brown v Evans,* 149 Mich 429, 431-432; 112 NW 1079 (1907). The circumstances must do more than create a mere suspicion of the existence of a conspiracy. 16 Am Jur 2d, Conspiracy, § 68, pp 279-280. The evidence must support a reasonable inference that the defendant acted with at least one other person to accomplish an unlawful end. *Rencsok v Rencsok,* 46 Mich App 250; 207 NW2d 910 (1973), *lv den* 390 Mich 751 (1973). Circumstantial evidence is insufficient if the inference of a conspiratorial design is not reasonable, probable, and unstrained. 15A CJS, Conspiracy, § 30, p 701.

The sole evidence presented by plaintiff on the

conspiracy charge against Sitek was the destruction of the photograph by an Identification Bureau officer after Sitek had been requested to preserve it. From this evidence, plaintiff asked the jury to infer that defendant Sitek told the Identification Bureau officer to destroy the photo and that he did so as part of a preconceived concerted plan to prejudice plaintiff's rights.

In my judgment, the circumstances proven by plaintiff did not naturally tend to support both of these necessary inferences. On the contrary, the inference of defendant Sitek's participation in concerted action against plaintiff is entirely speculative and considerably strained. In denying defendant Sitek's motion for a directed verdict, the trial court expressed its belief that the motion should probably be granted. I agree and, therefore, would reverse the court's ruling and enter a directed verdict of no cause of action as to defendant Sitek.

## IV

Like defendant Sitek, defendant Rojek claims that the trial court erred in denying his motion for a directed verdict on plaintiff's conspiracy allegation against him.

In response to defendant Rojek's motion, plaintiff's attorney stated that he had added him as a defendant in the amended complaint because of his May, 1977, deposition testimony. According to plaintiff, that testimony had been false and had been given in an attempt to further the aims of the conspiracy for which plaintiff had already sued the four original individual defendants.

There is no civil cause of action for the giving of

perjured testimony. *Rogoski v Muskegon,* 107 Mich App 730; 309 NW2d 718 (1981); *Meyer v Hubbell,* 117 Mich App 699; 324 NW2d 139 (1982). Witnesses' absolute privilege from civil suit arising from their testimony in judicial proceedings (including deposition testimony) is conferred so that participants in such proceedings may have relative freedom to express themselves without fear of retaliation. *Sanders v Leeson Air Conditioning Corp,* 362 Mich 692, 695; 108 NW2d 761 (1961); *Myers v Bull,* 599 F2d 863 (CA 8, 1979), *cert den* 444 US 901; 100 S Ct 213; 62 L Ed 2d 138 (1979).

In order to recover for a civil conspiracy, it is necessary to prove a separate, actionable tort. *Roche v Blair,* 305 Mich 608; 9 NW2d 861 (1943); *Earp v Detroit,* 16 Mich App 271; 167 NW2d 841 (1969). Since the giving of false testimony is not itself actionable, it is the general rule that no civil action lies for conspiracy to give or to procure false testimony. Anno: *Actionability of Conspiracy to Give or to Procure False Testimony or Other Evidence,* 31 ALR3d 1423; *Rogoski v Muskegon, supra.*

Because defendant Rojek was added as a defendant solely because of his deposition testimony, for which he was immune, we are persuaded that he should have been dismissed from this suit. There was no claim or evidence that he was in any way involved in the alleged conspiracy prior to the giving of his deposition testimony. We, therefore, order entry of a directed verdict of no cause of action as to defendant Rojek.

## V

Defendants challenge the court's refusal to give

SJI 5.01 with reference to plaintiff's failure to produce the testimony of a psychiatrist who had examined plaintiff at the request of his trial counsel. The standard instruction, now SJI 6.01, permits the jury to infer that evidence which was under a party's control and for which the party gave no reasonable excuse for nonproduction would have been adverse to that party.

The Supreme Court has adopted a strict rule requiring that requested standard jury instructions be given when they are applicable and accurate. *Socha v Passino,* 405 Mich 458; 275 NW2d 243 (1979); *Javis v Ypsilanti School Dist,* 393 Mich 689; 227 NW2d 543 (1975). The determination of whether a requested standard instruction is applicable and accurately states the law is addressed to the trial court's discretion. *Socha v Passino, supra,* 467.

Defendants do not challenge the trial court's ruling that the absence of this psychiatrist witness was attributable to plaintiff's proper assertion of his attorney-client privilege. In support of its ruling, the court cited *Lindsay v Lipson,* 367 Mich 1; 116 NW2d 60 (1962).

We find no abuse of the trial court's discretion in refusing to give the requested standard jury instruction. Plaintiff's assertion of privilege constituted a "reasonable excuse" for failure to present the witness's testimony. The instruction was, therefore, inapplicable and defendants had no right to its inclusion in the court's final charge to the jury.

## VI

Defendants allege several other instructional

errors. While defense counsel made numerous timely objections to the jury instructions, in order to preserve these issues for appellate review he was obliged to state specifically the matters to which he objected and the grounds of his objections. GCR 1963, 516.2; *Kotila v McGinty,* 28 Mich App 396; 184 NW2d 462 (1970). Although the requirements of GCR 1963, 516.2 were not met in this case, we have, nonetheless, carefully reviewed the allegations of instructional error to assure that defendants have not suffered manifest injustice. *Cf. Howard v Feld,* 100 Mich App 271; 298 NW2d 722 (1980). In only one respect are we persuaded that the instructions were manifestly unjust.[3]

Pursuant to MCL 600.2907; MSA 27A.2907,[4] the jury was instructed that in assessing damages against the four malicious prosecution defendants, the total amount of malicious prosecution damages

---

[3] The federal courts follow a similar strict rule regarding specificity of objections to jury instructions. See, *e.g., Corriz v Naranjo,* 667 F2d 892 (CA 10, 1981), a § 1983 action, where the defendants argued on appeal that the instructions improperly permitted "double recovery" for the same injuries. The court found that this objection had not been preserved for appellate review. Similarly, in this case, defendants deprived the trial court of the opportunity to rectify the alleged errors in the conspiracy and § 1983 instructions. We have given considerable attention to those allegations of error and, after reviewing the instructions as a whole, we are not persuaded that the jury verdict under defendants' conspiracy § 1983 count was manifestly unjust.

[4] "Every person who shall, for vexation and trouble or maliciously, cause or procure any other to be arrested, attached, or in any way proceeded against, by any process or civil or criminal action, or in any other manner prescribed by law, to answer to the suit or prosecution of any person, without the consent of such person, or where there is no such person known, shall be liable to the person so arrested, attached or proceeded against, in treble the amount of the damages and expenses which, by any verdict, shall be found to have been sustained and incurred by him; and shall be liable to the person in whose name such arrest or proceeding was had in the sum of $200.00 damages, and shall be deemed guilty of a misdemeanor, punishable on conviction by imprisonment in the county jail for a term not exceeding 6 months."

suffered by plaintiff at the hands of each of these individual defendants should be trebled.

Later in the charge, the court explained what it called the concept of "exemplary" damages. This instruction echoed the following rule described by the Supreme Court in *Scripps v Reilly,* 38 Mich 10, 23 (1878):

"Where, however, the elements exist in a case, entitling a party to recover damages for injured feelings, the amount to be allowed for shame, mental anxiety, insulted honor, and suffering and indignation consequent on the wrong, may be increased or aggravated by the vindictive feelings, or the degree of malice, recklessness, gross carelessness or negligence of the defendant, as the injury is much more serious where these elements, or either of them, are shown to have existed."

The Supreme Court noted that these damages must be considered "actual damages, although usually spoken of as exemplary, vindictive or punitory". *Scripps,* p 24. See *Ray v Detroit,* 67 Mich App 702; 242 NW2d 494 (1976), *lv den* 397 Mich 828 (1976); *Kewin v Massachusetts Mutual Life Ins Co,* 409 Mich 401, 419; 295 NW2d 50 (1980), *reh den* 409 Mich 1116 (1980).

As charged, the jury was permitted to include "exemplary" damages in its initial assessment of malicious prosecution damages and to treble the entire actual (including "exemplary") damage determination. Defendants argue that the jury was thus improperly permitted to award double "exemplary" damages. We agree.

In *LaLone v Rashid,* 34 Mich App 193; 191 NW2d 98 (1971), *lv den* 386 Mich 756 (1971), this Court, construing MCL 600.2907; MSA 27A.2907, held that the plaintiff in a malicious prosecution action must elect to have the jury include within

its actual damages determination the amount of "exemplary" damages suffered by the plaintiff, in which case the statutory trebling provision would not apply, or to have the trebling of "non-exemplary" actual damages compensate the plaintiff for his or her "exemplary" damages.[5] The rationale for this construction of the statute was recently described by Judge BASHARA:

"By allowing a trebling of the jury verdicts pursuant to the statute, two enhancements of the damages awards would be permitted plaintiffs on what, in effect, is the same policy consideration. The jury would be allowed to enhance the verdict based on the vague concept of injured feelings due to defendant's outrageous conduct. Plaintiffs would also receive a second enhancement pursuant to the statute which presumably expresses the legislative determination that a defendant should be punished for its outrageous conduct in a malicious prosecution action. Damages should bear some relationship to the harm actually committed and not be totally arbitrary, even where defendant has engaged in the most vile type of conduct." *Rivers v Ex-Cell-O Corp,* 100 Mich App 824, 842-843; 300 NW2d 420 (1980) (BASHARA, J., *dissenting*).

We adopt this construction of MCL 600.2907, and, therefore, vacate the four $1,500 jury awards against each of the malicious prosecution defendants. We remand to the circuit court, where plaintiff shall have the option of electing to proceed to a new trial on the malicious prosecution count, but limited only to the issue of damages, or of filing a written consent to a judgment in the

---

[5] In *LaLone,* the Court distinguished between "actual" and "exemplary" damages. The opinion suggests that "actual" and "exemplary" damages are mutually exclusive. We agree with the *LaLone* result but disagree with the notion that "exemplary" damages, as described in *Scripps v Reilly, supra,* are not "actual" damages. See *Ray v Detroit, supra.*

amount of $500 as to each of these four defendants on the malicious prosecution count.[6] Plaintiff's consent to the *remittiturs* shall be filed within ten days of the effective date of this opinion. See *LaLone v Rashid, supra. Cf.* GCR 1963, 527.6.

## VII

Each of the defendants challenges the award to plaintiff of attorney's fees in the amount of $8,231.66. The award was made pursuant to 42 USC 1988, which provides in part:

"In any action or proceeding to enforce a provision of * * * [42 USC 1983] the court, in its discretion, may allow the prevailing party * * * a reasonable attorney's fee as part of the costs."

The trial court in this case found that a reasonable attorney's fee for all of the services rendered by plaintiff's attorney would be $24,695. Only two of plaintiff's six claims, however, were predicated on § 1983. Accordingly, the court awarded attorney's fees to plaintiff in the amount of $8,231.66— two-sixths of $24,695.

We find no abuse of the trial court's discretion in its award of attorney's fees to plaintiff. *Dawson v Pastrick,* 600 F2d 70, 79 (CA 7, 1979). Since we vacated the § 1983 award against the city, however, we remand to the circuit court for recalculation of the attorney's fee. The court shall deter-

---

[6] The malicious prosecution special verdict form reads:

"We, the jury, find in favor of the plaintiff, John Zmija and against all of the defendants *[i.e.,* defendants Baron, Chylinski, Misiak, and Pietrzak] in the following amounts:

| | | |
|---|---|---|
| J. Baron | $500.00 × 3 = | $1,500.00 |
| H. Chylinski | $500.00 × 3 = | $1,500.00 |
| D. Misiak | $500.00 × 3 = | $1,500.00 |
| L. Pietrzak | $500.00 × 3 = | $1,500.00" |

mine a reasonable attorney's fee, if any, due plaintiff for his partially successful prosecution of § 1983 claims. The fact that plaintiff's § 1983 success was only partial would not automatically preclude an assessment of attorney's fees in his favor against those defendants found liable to him under § 1983. Scheriff v Beck, 452 F Supp 1254 (D Colo, 1978); *Sethy v Alameda County Water Dist,* 602 F2d 894 (CA 9, 1979), *cert den* 444 US 1046; 100 S Ct 734; 62 L Ed 2d 731 (1980). If plaintiff elects to retry his § 1983 claim against the city and he prevails in that action, he may petition the court for an additional allowance of reasonable attorney's fees under 42 USC 1988.

I would affirm in part, reverse in part, and remand for proceedings consistent herewith.