JONES *v.* C. F. SMITH CO.

1. Negligence—Grocery Store—Secreted Policeman.

    Act of grocery store manager in permitting policeman to be in hiding within the store pursuant to orders from such officer's superiors either to prevent commission of a crime or to apprehend and arrest a known or unknown bandit *held*, not a tortious act as a matter of law.

2. Same—Grocery Store—Secreted Policeman—Death of Customer—Proximate Cause.

    Even if act of grocery store manager in permitting policeman to be in hiding within the store to prevent commission of crime or to apprehend criminals be tortious, before store owner could be held for fatal injuries inflicted upon customer when bandit was apprehended such negligence must be shown to have been proximate cause of death.

3. Homicide—Policeman—Bandits.

    Policeman has the legal right to take the life of a bandit or attempt to do so to prevent a bandit from taking officer's life.

4. Master and Servant—Respondeat Superior—Grocery Store—Policeman.

    Relationship of *respondeat superior* between policeman, stationed in defendant grocery company's store at order of his superior officers and with permission of store manager, and grocery company *held*, not to exist where such officer was not there at request or express permission of defendant grocery company nor acting under any instructions from it.

5. Negligence—Grocery Store—Secreted Policeman—Reasonably Safe Place to do Business.

    Grocery store owner *held*, not liable for death of customer killed by policeman during apprehension of bandit who held up the store where, although such officer had been secreted in such store under orders of his superior officers but was not there

to protect owner's private property nor at request or express permission of such owner, knowledge of his being secreted was not conveyed to customer and jury found officer not negligent, since defendant company had no control over officer and store was a reasonably safe place to do business.

Appeal from Wayne; Ferguson (Homer), J. Submitted April 22, 1937. (Docket No. 36, Calendar No. 39,371.) Decided June 7, 1937.

Case by Ruby Jones, administratrix of the estate of Charles Jones, deceased, against C. F. Smith Company, a Michigan corporation, City of Detroit, a municipal corporation, and John R. Sheridan for damages for personal injuries causing death of plaintiff's decedent as a result of being shot during a holdup. Directed verdict for defendant City of Detroit. Judgment for defendant C. F. Smith Company *non obstante veredicto* for plaintiff. Plaintiff appeals. Affirmed.

*Schudlich, Magel, Young & Morth,* for plaintiff.

*Howard Farrell,* for defendant company.

CHANDLER, J. This action is brought by the administratrix of the estate of Charles Jones, deceased, who was killed in a store operated by defendant, C. F. Smith Company, on November 26, 1934. The case was submitted to the jury which rendered a verdict of $4,000 in favor of plaintiff and against defendant. On a motion to enter judgment *non obstante veredicto* by defendant, C. F. Smith Company, Honorable Homer Ferguson, circuit judge before whom said cause was tried, granted said motion and entered a judgment in favor of defendant.

For a statement of the facts and circumstances leading up to the killing, we adopt from the opinion of the court upon the granting of defendant's motion, in so far as it is sustained by undisputed testimony in the case, the following:

"The C. F. Smith Company owned and operated a grocery store at 451 Harper avenue, Detroit, Michigan. The store was managed by Mr. Ries. Said manager had operated a store for some four years. The store had been held up twice prior to the date in question. The date of the first holdup was not stated, but the second holdup was approximately 10 days prior to the date in question. The said manager had been instructed by officials of the said corporation as to how he should care for the money in the store, and how the same should be concealed in different envelopes, to lessen the danger of total loss in case of a holdup. The manager had reported the first two losses of money by robbery armed to the officials. On Saturday, November 24, 1934, a police officer of the metropolitan police department of the city of Detroit went into the store, and went to the back part where he was concealed from view of those entering the door, by an icebox in the store; that he remained there from 7 p. m. until the close of the store at about 10 p. m. At about 4 o'clock on Monday, November 26, 1934, John R. Sheridan, a police officer of the city of Detroit entered the store premises and said to the manager, ''I am going to keep you company for a while.'' The police officer thereupon went to the rear of the store and was concealed from the view of those entering the store by an icebox. The police officer remained out of view of the customers of said store until shortly after 6 o'clock on said date. Prior to 6 o'clock, Charles Jones, the deceased, entered the premises, purchased a dozen eggs, and paid for the

same, remaining in the store after the purchase for some 10 minutes, having had a conversation with the manager of the said store. The manager, at no time, told the deceased Jones that there was a police officer in the said store. There was also in the store at the time Marie Anderson, a girl of 14 years of age; Arthur Vincent, a boy 17 years of age; and one John Wade. At about 6:25 p. m. a bandit, one James Ferrell, entered the store with a drawn pistol, and immediately placed the girl, Marie Anderson, in front of him as a shield. With his drawn gun, he walked to the cash register and demanded the manager to get the envelopes first. The store manager proceeded to get the envelopes. Then, without any warning, the police officer stepped into full view, and the bandit Ferrell opened fire. After the girl was able to extricate herself from in front of the bandit, the police officer, who came into full view with a drawn gun, began to shoot. The officer shot six times, and the bandit shot a number of times. * * * After the bandit left, the bandit having been shot six times by the police officer, Jones was found upon the floor near the front window, mortally wounded, and he died within a few minutes from the injuries thus received. The evidence shows that the bullet wound causing the death of Jones was from the gun of John Sheridan, the police officer.

"This action was brought against the city of Detroit, John Sheridan, and the defendant, C. F. Smith Company. A directed verdict was had at the opening of the case upon motion of the city of Detroit. The court submitted special questions to the jury in the case of the plaintiff against Sheridan, the police officer. The jury answered that question, that there was no negligence on the part of the officer in the use of his fire arm in the shooting of Jones. The answer released the defendant Sheridan from liability and a judgment of no cause of action has been

rendered for Sheridan. The court submitted three questions to the jury, which are as follows:

" 'Question No. 3: Did the defendant store company fail to maintain and operate its store in a reasonably safe manner as a reasonably prudent merchant would have maintained and operated his store?
" 'Answer: Yes.

" 'Question No. 4: If you answer question No. 3 "yes," then answer this question No. 4: Was the failure of the C. F. Smith Company to maintain and operate its store in a reasonably safe manner, as a reasonably prudent merchant would have maintained and operated his store such a cause as operated to produce the particular consequences, that is, the injury and death of the plaintiff's decedent, Charles Jones, without the intervention of any independent unforeseen cause without which such injury would not have occurred?
" 'Answer: Yes.

" 'Question No. 5: Did plaintiff's decedent, Charles Jones, do anything while in the store which contributed in any degree to the injuries he received in the store in question?
" 'Answer: No.' "

The questions involved for our determination are: first, did the defendant, C. F. Smith Company, by its manager, in permitting the officer to secrete himself in the store, exercise that degree of prudence which a reasonably prudent merchant would have exercised under the circumstances in this case; and second, if it was negligence on the part of the defendant company to permit the officer under the facts and circumstances of this case to secrete himself in the store, was such negligence the proximate cause of the injuries here complained of? The jury answered both of these questions in favor of plaintiff.

The plaintiff contends that the defendant by permitting the officer to secrete himself in the store to await the arrival of a bandit, who might or might not come, created a trap, and insists that "he who creates a trap is liable for damages." The decisions cited by appellant relative to traps are not applicable to this case. The word "trap" as defined

by Webster's New International Dictionary (Reference History Ed.), is as follows:

"(1) A device, as a pitfall, snare, or machine that shuts suddenly as with a spring, for taking game and other animals: a gin. (2) Hence, any device or contrivance by which one may be caught unawares, stratagem; snare; gin."

(1) Was the act of defendant's manager in permitting a police officer to be in hiding within the store, such officer being there in the exercise and performance of his duties, either to prevent the commission of a crime or to apprehend and arrest a known or unknown bandit, a tortious one? If it was a wrongful act, then the plaintiff can recover, providing such negligence was the proximate cause of the injuries complained of. (2) If such act on the part of the manager constituted an act of negligence and rendered unsafe the store of defendant, then was such negligence the proximate cause of the death of decedent, without the intervention of any independent, unforeseen cause, without which his death would not have occurred?

The trial judge answered both of these questions in the negative, and a careful review of all of the facts and circumstances in this case, as disclosed by the record therein, convinces us that he was right.

The police officer, John Sheridan, was acting as permitted by the law, and in compliance with an order of his superior. The police officer was there for a dual purpose: first, to prevent the commission of a crime; and second, to apprehend an enemy of the law if he should appear. The officer was performing a legal and regular duty, and the jury in freeing him from liability found that he was not negligent. It was the legal right of the officer to

take the life of Ferrell, the bandit, or to attempt to take his life, to prevent said bandit from taking his (the officer's) life. It was by virtue of his sworn duty to uphold the law that he acted as he did to effectuate an arrest.

The record is convincing that officer Sheridan was not in defendant's store on the day in question at the request of defendant or any of its agents. We quote from the testimony of one of plaintiff's witnesses, Lieutenant Bock:

"Because of an epidemic of holdups in the last two or three weeks preceding that date, in that precinct, Sheridan was detailed to the C. F. Smith store at 451 Harper. My instructions to him, were to conceal himself in such a position where he could see anyone that came in, and, in case of a holdup he could apprehend the bandit or try to prevent the holdup. * * *

"I never at any time, discussed holdups with the officials of the C. F. Smith Company, nor to my knowledge did anyone in my precinct. * * *

"Other officers were stationed at other stores on that particular night. All had specific instructions to conceal themselves and to apprehend the holdup man in case he came in, or to prevent the holdup. I did not send officer Sheridan as a private protector of the C. F. Smith money or goods."

With this convincing proof that neither the defendant nor its agents had any control over officer Sheridan, or that he was acting under any instructions from defendant, there was no relationship of *respondeat superior,* and the officer in attempting to arrest the bandit, and in the gunplay which resulted, was acting on his own initiative in an attempt to protect his own life and the lives of those who were in the store, and the jury by their verdict found that his conduct was not wrongful, that he was not

negligent, although it was his own independent act, not intentional of course, that resulted in the death of plaintiff's decedent.

The act of defendant's manager in permitting the police officer to be in the store, even though secreted, was only the act which we would expect of any law-abiding citizen desirous of preventing crime and apprehending those guilty of criminal acts. It is indeed much to be regretted that loss of life was one of the consequences in this attempt to prevent the commission of a crime and arrest of a criminal. The record certainly does not disclose that such loss of life or injuries might be contemplated, foreseen or expected, either by the defendant's manager or the officer who fired the fatal shot.

As was so well stated by Judge Ferguson in the granting of defendant's motion:

"The same thing * * * could have happened in this case, had the officer been anywhere in the store, or had the officer been passing after the bandit had entered the store. It would be extending the rule of negligence too far to say this defendant was negligent and that this store was not a reasonably safe place to do business when it had an officer of the law in it. Many business places have placed armed guards and officers in their places of business for the protection of customers and the enforcement of the criminal law. To permit a recovery in this case would be to say that such conduct was illegal, and that it was negligence to aid in the administration and enforcement of the criminal law."

Judgment affirmed, with costs.

FEAD, C. J., and NORTH, WIEST, BUTZEL, BUSHNELL, SHARPE, and POTTER, JJ., concurred.