## MOORE v CITY OF DETROIT

Docket No. 57193. Submitted June 10, 1982, at Detroit.—Decided June 23, 1983. Leave to appeal applied for.

Pleze Moore was seriously injured in a shoot-out between an off-duty Detroit police officer and an armed robber. Moore and his mother, Ada Moore, brought suit in Wayne Circuit Court against the City of Detroit. The court, Henry J. Szymanski, J., granted the defendant a directed verdict, finding that the plaintiffs' tort action was barred by governmental immunity and that plaintiffs had not established a prima facie case for a claim of deprivation of civil rights under 42 USC 1983. The plaintiffs appealed. *Held:*

1. The trial court did not err in directing a verdict for the defendant on the plaintiffs' tort action. The police officer had the right and the duty to attempt to arrest the robber and to use deadly force in doing so. The defendant was clearly protected from liability under the doctrine of governmental immunity.

2. The trial court did not err in directing a verdict for the defendant on the plaintiffs' action under 42 USC 1983. The plaintiffs did not establish a prima facie case showing a constitutional violation. The training of the police officer, although possibly negligent, did not rise to the level compensable under § 1983. The policy, custom or approval of the police department

### REFERENCES FOR POINTS IN HEADNOTES

[1] 75 Am Jur 2d, Trial § 489 *et seq.*

[2] 57 Am Jur 2d, Municipal, School, and State Tort Liability § 243.

[3] 57 Am Jur 2d, Municipal, School, and State Tort Liability §§ 79, 90.

[4] 15 Am Jur 2d, Civil Rights §§ 16-19.
Supreme Court's views as to meaning of term "person" as used in statutory or constitutional provision. 56 L Ed 2d 895.

[5] 15 Am Jur 2d, Civil Rights § 26.
57 Am Jur 2d, Municipal, School, and State Tort Liability § 90.

[6] 15 Am Jur 2d, Civil Rights §§ 16, 18, 19.

[7] 57 Am Jur 2d, Municipal, School, and State Tort Liability § 250.
Municipal liability for personal injuries resulting from police officer's use of excessive force in performance of duty. 88 ALR2d 1330.

concerning the officer's conduct and the conduct itself does not constitute the type of abuse of official power which takes such an incident outside the realm of ordinary tort law and into the category of a constitutional violation which § 1983 was intended to redress.

Affirmed.

1. JUDGMENTS — MOTIONS AND ORDERS — DIRECTED VERDICTS.

A trial court must view the testimony and all legitimate inferences in a light most favorable to the nonmoving party when considering a motion for a directed verdict; if the evidence establishes a prima facie case, the motion by a defendant must be denied.

2. GOVERNMENTAL IMMUNITY — POLICE DEPARTMENTS.

The management, operation and control of a police department is a governmental function and tort actions against a municipality based on the negligence of its police officers, occurring while the officer is engaged in a discharge of that function, are barred by the doctrine of governmental immunity; however, a municipality may be liable for the intentional torts of its employees within the scope of their employment because such activities are not in the exercise or discharge of a governmental function.

3. GOVERNMENTAL IMMUNITY — INTENTIONAL TORTS.

Governmental immunity applies to shield from liability for intentional torts where the actions constituting the intentional torts were justified under the circumstances.

4. CIVIL RIGHTS — FEDERAL ACTIONS.

Insofar as 42 USC 1983 affords a civil remedy for deprivations of federally protected rights by persons acting under color of state law without any express requirement of a particular state of mind, the initial inquiry in any § 1983 action must focus on whether the two essential elements to a § 1983 action are present, that is, whether the conduct complained of was committed by a person acting under color of state law and whether this conduct deprived the person of rights, privileges or immunities secured by the Constitution or laws of the United States.

5. CIVIL RIGHTS — MUNICIPAL CORPORATIONS.

Municipalities are persons for purposes of liability for deprivation of civil rights under 42 USC 1983; a municipality cannot, however, be found liable under § 1983 on a *respondeat superior* theory; the municipality must be sued directly and liability must be based upon an official policy or custom which causes the injury; a plaintiff must show an affirmative link between

the misconduct and the adoption of any plan or policy, showing defendant's authorization or approval of such conduct.

6. CIVIL RIGHTS — CONSTITUTIONAL LAW.

Only violations of the life, liberty and property interests protected by the Fourteenth Amendment can form the basis of an action under 42 USC 1983.

7. CIVIL RIGHTS — POLICE DEPARTMENTS — CONSTITUTIONAL LAW — ACTIONS — UNITED STATES CODE.

Although a city cannot be held liable for the simple negligent training of its police force, a city's citizens do not have to endure a "pattern" of past police misconduct before they can sue the city under the federal statute governing civil actions for deprivation of rights; if a municipality completely fails to train its police force, or trains its officers in a reckless or grossly negligent manner so that future police misconduct is almost inevitable, the municipality exhibits a "deliberate indifference" to resulting violations of a citizen's constitutional rights; in such a case, the municipality may fairly be termed as acquiescing in and implicitly authorizing such violations (42 USC 1983).

*Richard M. Goodman,* for plaintiffs.

City of Detroit Law Department (by *William B. Daniel,* Assistant Corporation Counsel), for defendant.

Before: J. H. GILLIS, P.J., and WAHLS and R. H. BELL,* JJ.

PER CURIAM. Plaintiffs appeal as of right from a directed verdict entered in favor of defendant.

Plaintiffs filed this action, seeking damages for injuries sustained by plaintiff Pleze Moore in a shoot-out between an off-duty Detroit police lieutenant and an armed robber. On October 16, 1976, at about 12:30 a.m., Pleze Moore was standing in line with 10 to 13 other customers in a Church's Fried Chicken Restaurant in Detroit, waiting to be

---

* Circuit judge, sitting on the Court of Appeals by assignment.

served. An off-duty Detroit Police Officer, Lieutenant Johnnie Shoates, was also waiting in line. Lieutenant Shoates was not in uniform, but he was carrying a concealed .38-caliber revolver. The customers were divided into two lines, approaching two cash registers, when a man entered the restaurant brandishing a handgun. The gunman walked up to one cash register, but the cashier had her back turned and failed to notice him. He then confronted the other cashier and demanded money. When the cashier stepped back from the counter, the gunman removed the cash drawer from the register. At that point, Lieutenant Shoates announced that he was a police officer, drew his handgun and pointed it in the direction of the gunman. The gunman turned and dropped the cash drawer. Thereafter, several shots were fired. Pleze Moore was struck in the chest by a bullet which damaged his spinal cord, causing permanent paralysis from the waist down. Three other customers were wounded in the shoot-out. Lieutenant Shoates was shot twice. His wounds have caused him permanent brain damage. The gunman escaped from the restaurant unharmed, but he was apprehended later. Lieutenant Shoates was awarded a citation and medal by Detroit Chief of Police William Hart for "heroic and courageous actions".

The trial testimony did not establish whether Lieutenant Shoates or the gunman shot first or whether the bullet which struck plaintiff was fired from Lieutenant Shoates's firearm or the gunman's weapon. A police inspector who investigated the incident testified that there was no one in the direct line of fire between Lieutenant Shoates and the gunman and that there was no one behind the gunman when the shooting occurred. Based on his

investigation, the inspector concluded that Shoates acted in conformance with his duty and department regulations, which require that the safety of bystanders be considered and that deadly force should not be used when a bystander is in the line of fire.

Plaintiffs' expert witness testified that a confrontation between an off-duty policeman and a gunman is dramatically different than an encounter between a gunman and an on-duty police officer. The expert claimed that training is necessary for a police officer to understand the differences between the two situations and to know how to protect himself and bystanders. According to plaintiffs' expert, Lieutenant Shoates's action in drawing his firearm while in civilian clothes precipitated the exchange of gunfire and was, therefore, outrageous and in clear disregard of the other customers' safety. In the expert's opinion, a properly trained police officer would have responded by waiting until the robber left the store before attempting to make an arrest.

The commander of the Detroit Police Acadmey testified that, in a Detroit police officer's training, no distinction is made between an off-duty and an on-duty confrontation with a gunman. He maintained that Detroit police officers are trained to evaluate the totality of the circumstances involved in each confrontation. He also explained that police training and Detroit Police Department regulations cover the use of firearms in the presence of innocent bystanders and that the defendant gave Lieutenant Shoates almost four times the amount of training required by the state for police officers. Furthermore, the Detroit Police Department has made its policy on the use of deadly force far more strict than existing state law requires.

At the conclusion of the plaintiffs' proofs, the trial court granted defendant's motion for a directed verdict as to all counts of plaintiffs' complaint. The court found that the plaintiffs' tort action against defendant was barred by the governmental immunity statute, MCL 691.1407; MSA 3.996(107), and that plaintiffs had not made a prima facie case for a claim under 42 USC 1983.

Plaintiffs now contend that the trial court erred in directing a verdict in favor of defendant. We disagree.

A trial court in considering a motion for a directed verdict must view the testimony and all legitimate inferences in a light most favorable to the nonmoving party. If the evidence establishes a prima facie case, the motion must be denied, *Caldwell v Fox,* 394 Mich 401; 231 NW2d 46 (1975); *Weeks v Feltner,* 99 Mich App 392; 297 NW2d 678 (1980). In slightly different terms, this Court has held that a motion for directed verdict should be denied when the facts, viewed in a light most favorable to the nonmovant, are such that reasonable persons could honestly reach different conclusions. *Tiffany v Christman Co,* 93 Mich App 267; 287 NW2d 199 (1979).

The governmental immunity statute provides:

"Except as in this act otherwise provided, all governmental agencies shall be immune from tort liability in all cases wherein the government agency is engaged in the exercise or discharge of a governmental function. Except as otherwise provided herein, this act shall not be construed as modifying or restricting the immunity of the state from tort liability as it existed heretofore, which immunity is affirmed." MCL 691.1407; MSA 3.996(107).

It is well settled that the management, opera-

tion and control of a police department is a governmental function and that tort actions against a municipality based on the negligence of its police officers, occurring while the officer is engaged in a discharge of that function, are barred by the doctrine of governmental immunity. *Fiser v Ann Arbor,* 107 Mich App 367, 371; 309 NW2d 552 (1981), *lv gtd* 412 Mich 915 (1982); *Berger v City of Berkley,* 87 Mich App 361, 367-368; 275 NW2d 2 (1978), *lv den* 406 Mich 969 (1979); *Walkowski v Macomb County Sheriff,* 64 Mich App 460; 236 NW2d 516 (1975). However, a municipality can be liable for the intentional torts of its employees within the scope of their employment, as such activities are not in the exercise or discharge of a governmental function. *Lockaby v Wayne County,* 406 Mich 65; 276 NW2d 1 (1979); *McCann v Michigan,* 398 Mich 65; 247 NW2d 521 (1976).

Plaintiffs argue that they established a prima facie case that Lieutenant Shoates committed an intentional tort. According to plaintiffs, the testimony showed that Lieutenant Shoates acted wilfully and outrageously in drawing his firearm and that it was highly probable that he fired the bullet which struck Pleze Moore.

Plaintiffs' arguments are without merit. Plaintiffs produced little or no evidence establishing that Lieutenant Shoates fired the shot which struck Pleze Moore. In any case, even if plaintiffs could have demonstrated that Lieutenant Shoates shot Pleze Moore, Lieutenant Shoates would not have committed an intentional tort. Plaintiffs' intentional tort theory is necessarily based on the doctrine of transferred intent. However, the doctrine of transferred intent is not applicable in a case such as the present one, where the allegedly tortious conduct was justified. In such a situation,

there is no intentional tort liability but only potential negligence liability. Prosser, Torts (4th ed), § 119, pp 112-113, fn 50. Furthermore, this Court has also held that, where a government employee's intentional tort is justified, the doctrine of governmental immunity bars a tort claim against the governmental entity. *Smith v Michigan,* 122 Mich App 340; 333 NW2d 50 (1983).

There is no question that Lieutenant Shoates had the right and the duty to attempt to arrest the robber and to use deadly force in doing so. See *Jones v C F Smith Co,* 280 Mich 514, 519-521; 273 NW 786 (1937). Accordingly, plaintiffs' intentional tort theory was deficient as a matter of law. Although reasonable men could differ on the question of whether Lieutenant Shoates was negligent in attempting to arrest the gunman, the defendant was clearly protected from negligence liability under the doctrine of governmental immunity.

Plaintiffs next contend that the trial court erred in directing a verdict on the § 1983 claim where the evidence showed that: (1) the defendant acquiesced in, and approved of, Lieutenant Shoates's reckless and outrageous conduct in precipitating the shoot-out; (2) the policy and custom of defendant approved of and may even have required Lieutenant Shoates to act in such a manner, making it inevitable that an armed, off-duty police officer would encounter an armed robber; and (3) the training of Lieutenant Shoates was grossly negligent in that it failed to prepare him to respond properly to off-duty confrontations such as the one which resulted in plaintiffs' injuries.

42 USC 1983 provides in pertinent part:

"Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes

to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress * * *.' "

To establish a right to relief under § 1983, a plaintiff must plead and prove two elements: (1) that he has been deprived of a right secured by the Constitution and laws of the United States; and (2) that defendant deprived him of this right while acting under color of law. *Parratt v Taylor*, 451 US 527; 101 S Ct 1908; 68 L Ed 2d 420 (1981); *Paul v Davis*, 424 US 693; 96 S Ct 1155; 47 L Ed 2d 405 (1976).

Municipalities are persons for purposes of § 1983 liability. *Monell v Dep't of Social Services of City of New York*, 436 US 658; 98 S Ct 2018; 56 L Ed 2d 611 (1978); *Zmija v Baron*, 119 Mich App 524, 534; 326 NW2d 908 (1982). A municipality cannot, however, be found liable under § 1983 on a *respondeat superior* theory. *Monell, supra; Zmija, supra; Hays v Jefferson County*, 668 F2d 869 (Ca 6, 1982). The municipality must be sued directly and liability must be based upon an official policy or custom which causes the injury. *Monell, supra,* p 694; *Zmija, supra,* p 535; *Popow v City of Margate*, 476 F Supp 1237, 1245 (D N J, 1979). Specifically, the plaintiff must show an affirmative link between the misconduct and the adoption of any plan or policy, showing defendant's authorization or approval of such conduct. *Rizzo v Goode*, 423 US 362; 96 S Ct 598; 46 L Ed 2d 561 (1976); *Popow, supra,* p 1245; *Hays v Jefferson County, supra,* p 872.

As stated above, testimony was adduced below which indicated that Lieutenant Shoates acted in

conformance with the department's rules and regulations when he confronted the robber in the restaurant. Furthermore, it was established that Lieutenant Shoates received a medal and a citation for heroism as a result of his actions. Viewing the evidence in a light most favorable to plaintiffs, plaintiffs established a prima facie case that there was an official policy or custom which may have resulted in Pleze Moore's injuries and that defendant approved of or acquiesced in Lieutenant Shoates's actions. Plaintiffs also established, by their expert's testimony, a prima facie case that the training of Lieutenant Shoates may have been deficient in that it failed to differentiate between an off-duty and an on-duty encounter with an armed robber. It is also clear that Lieutenant Shoates was acting under color of law when the incident occurred. However, we find that plaintiffs did not establish a prima facie case showing a violation of the constitution or federal law and that accordingly, the directed verdict in favor of defendant was proper.

In *Paul v Davis, supra,* the Supreme Court ruled that only violations of the life, liberty and property interests protected by the Fourteenth Amendment can form the basis of a § 1983 action. The five-justice majority opinion held that there was no deprivation of a constitutional right by state officials who placed the plaintiff's name and picture on a list of "active shoplifters", although the plaintiff had never been convicted of shoplifting. Justice Rehnquist, writing for the majority, reasoned that reputation is not a liberty or property interest protected by the Fourteenth Amendment. *Popow, supra,* p 1240. In the opinion, Justice Rehnquist expressed a dissatisfaction with including torts within the scope of § 1983 simply because the

defendant was a state official. In expressing this concern, he posed a situation similar to the present case:

"If respondent's view is to prevail, a person arrested by law enforcement officers who announce that they believe such person to be responsible for a particular crime in order to calm the fears of an aroused populace, presumably obtains a claim against such officers under § 1983. And since it is surely far more clear from the language of the Fourteenth Amendment that 'life' is protected against state deprivation than it is that reputation is protected against state injury, *it would be difficult to see why the survivors of an innocent bystander mistakenly shot by a policeman or negligently killed by a sheriff driving a government vehicle, would not have claims equally cognizable under § 1983.*

"It is hard to perceive any logical stopping place to such a line of reasoning. Respondent's construction would seem almost necessarily to result in every legally cognizable injury which may have been inflicted by a state official acting under 'color of law' establishing a violation of the Fourteenth Amendment. We think it would come as a great surprise to those who drafted and shepherded the adoption of that Amendment to learn that it worked such a result, and a study of our decisions convinces us they do not support the construction urged by the respondent." 424 US 698; 96 S Ct 1159; 47 L Ed 2d 412. (Emphasis added.)

See, also, *Baker v McCollan,* 443 US 137, 138; 99 S Ct 2689; 61 L Ed 2d 433 (1979) (three-day imprisonment of wrong person based on facially valid warrant not a constitutional deprivation); *Procunier v Navarette,* 434 US 555; 98 S Ct 855; 55 L Ed 2d 24 (1978) (good faith immunity shielded the defendants from liability from negligent interference with prisoner's outgoing mail). See *Popow, supra,* p 1241.

Although the Supreme Court has not resolved

the question of whether simple negligence will give rise to § 1983 liability, it has attempted to clarify the statute's scope. Rejecting a claim that prison officials were liable for losing an inmate's hobby materials, the Supreme Court in *Parratt v Taylor, supra,* stated:

"To accept respondent's argument that the conduct of the state officials in this case constituted a violation of the Fourteenth Amendment would almost necessarily result in turning every alleged injury which may have been inflicted by a state official acting under 'color of law' into a violation of the Fourteenth Amendment cognizable under § 1983. It is hard to perceive any logical stopping place to such a line of reasoning. Presumably, under this rationale any party who is involved in nothing more than an automobile accident with a state official could allege a constitutional violation under § 1983. Such reasoning 'would make the Fourteenth Amendment a font of tort law to be superimposed upon whatever systems may already be administered by the states.' *Paul v Davis, supra.* We do not think the drafters of the Fourteenth Amendment intended the amendment to play such a role in our society." 451 US 527, 544.

While the Supreme Court has not set the full contours of municipal liability under § 1983, federal courts and this Court have attempted to set the parameters. See *Zmija, supra,* p 535; *Popow, supra; Hays v Jefferson County, supra.* Numerous decisions have recognized that proof of mere negligence is insufficient. See, generally, *Zmija, supra; Popow, supra; Leite v City of Providence,* 463 F Supp 585 (D R I, 1978). The applicable standard has been described as deliberate indifference, gross negligence, or recklessness. *Zmija, supra,* p 535. Where the claim against the municipality is based on a failure to adequately train police officers, this Court has adopted the deliberate indifference stan-

dard, quoting the following portion of *Leite v City of Providence:*

"Although a city cannot be held liable for simple negligent training of its police force, the city's citizens do not have to endure a 'pattern' of past police misconduct before they can sue the city under section 1983. If a municipality completely fails to train its police force, or trains its officers in a reckless or grossly negligent manner so that future police misconduct is almost inevitable, the municipality exhibits a 'deliberate indifference' to the resulting violations of a citizen's constitutional rights. In such a case, the municipality may fairly be termed as acquiescing in and implicitly authorizing such violations. In light of the responsibility, authority, and force that police normally wield, a municipality is fairly considered to have actual or imputed knowledge of the almost inevitable consequences that arise from the nonexistent or grossly inadequate training and supervising of a police force. If the plaintiff's injury results from the complete lack of training or grossly inadequate training of a police force, such an injury is not the result of mere negligence but the result of a deliberate and conscious indifference by the city. The training and supervising of these police officers must be so inadequate and the resulting misconduct so probable, that the city can fairly be considered to have acquiesced in the probability of serious police misconduct." 463 F Supp 590-591. See, also, *Hays v Jefferson County.*

Here, the record established that Lieutenant Shoates and his fellow police officers received a great deal of training in the use of firearms and in deciding whether to use a firearm in the presence of bystanders. Although, in viewing the evidence in a light most favorable to plaintiffs, the training of Detroit police officers to evaluate the totality of the circumstances, rather than to be sensitized to the differences between an on-duty and an off-duty encounter with an armed criminal, may have been

deficient, it was not a complete failure to train or training that is so reckless or grossly negligent as to make future police misconduct almost inevitable, rendering the defendant liable under § 1983. At most, such deficiency must be viewed as negligence. Accordingly, the training of Lieutenant Shoates, although possibly negligent, did not rise to the level of a constitutional violation. Similarly, the policy, custom or approval of the police department concerning Lieutenant Shoates's conduct and the conduct itself do not constitute the type of abuse of official power which takes such an incident outside the realm of ordinary tort law and into the category of a constitutional violation which § 1983 was intended to redress.

Affirmed.