HILL v CITY OF SAGINAW

Docket No. 69637. Submitted March 6, 1985, at Lansing. Decided June 25, 1986.

Marcellus Moton was involved in an automobile accident in the City of Saginaw. Police officers arriving on the scene noticed Moton lying on the front seat of his car with no obvious injuries. Moton was asleep and the car doors were locked. The police officers then tended to other injured persons at the scene of the accident. A few minutes later, one of the officers, John Engles, returned to Moton's automobile and succeeded in opening one of the doors. According to Engles, Moton was intoxicated to the point where he kept falling asleep while being questioned. Moton appeared to be uninjured, walked back to Engles' police car and, when asked if he wanted to go to the hospital or take a Breathalyzer test, responded that he wanted to take the Breathalyzer test. The test was administered and showed that Moton had a blood alcohol level of 0.19 percent. Moton was taken to the county jail and charged with driving under the influence of intoxicating liquor, failure to produce an operator's license, and failure to control a motor vehicle. Moton was released from custody about ten hours later. The next day, Moton was admitted to Saginaw Osteopathic Hospital for surgery to repair a torn colon. He died the following day from adult respiratory distress syndrome, which follows trauma.

REFERENCES

Am Jur 2d, Civil Rights §§ 16-20.5.

Am Jur 2d, Municipal, School, and State Tort Liability §§ 27 *et seq.,* 85 *et seq.*

Am Jur 2d, Sheriffs, Police, and Constables § 100.

Am Jur 2d, Torts §§ 6, 11, 22.

Defense of good faith in action for damages against enforcement official under 42 USCS § 1983, providing for liability of person who, under color of law, subjects another to deprivation of rights. 61 ALR Fed 7.

Vicarious liability of superior under 42 USCS § 1983 for subordinate's acts in deprivation of civil rights. 51 ALR Fed 285.

Police action in connection with arrest as violation of Civil Rights Act, 42 USCS § 1983. 1 ALR Fed 519.

See also the annotations in the Index to Annotations under Torts.

Barbara Hill, personal representative of the estate of Marcellus Moton, deceased, filed a wrongful death action against the City of Saginaw, the Saginaw Police Department, the County of Saginaw, the Saginaw County Sheriff's Department and various police officers in Saginaw Circuit Court alleging gross negligence, violation of Moton's civil rights, and loss of consortium. The court, Hazen R. Armstrong, J., dismissed the claims against the defendants. Plaintiff appealed.

The Court of Appeals *held:*

1. Plaintiff's argument that the trial court erred when it permitted the county to orally join in the city's motion for summary judgment is without merit.

2. The trial court did not err in granting summary judgment in favor of the City of Saginaw, the Saginaw Police Department, Saginaw County, and the Saginaw County Sheriff's Department on grounds of governmental immunity. The operation of a police department and a county jail are governmental functions entitling those defendants to governmental immunity in this case.

3. The intentional tort exception to the governmental immunity act is not applicable under the facts of this case.

4. The trial court did not err in granting summary judgment in favor of Saginaw County and the City of Saginaw on the civil rights claims. Plaintiff failed to adequately allege or show that either the city or the county had the requisite policy or custom of depriving arrested persons or inmates of their constitutional rights or that they evinced deliberate indifference to plaintiff's decedent.

5. The trial court properly dismissed plaintiff's action against the Saginaw County Sheriff's Department. The department's motion to dismiss was not untimely, and plaintiff failed to plead facts in avoidance of governmental immunity.

6. The trial court did not err in granting summary judgment in favor of the individual defendants.

Affirmed.

1. GOVERNMENTAL IMMUNITY — GOVERNMENTAL FUNCTIONS — TORTS.

Governmental agencies are immune from tort liability only when they are engaged in the exercise or discharge of a governmental function; a governmental function is any activity which is expressly or impliedly mandated or authorized by constitution, statute, or other law (MCL 691.1407; MSA 3.996[107]).

2. GOVERNMENTAL IMMUNITY — COUNTY JAILS — GOVERNMENTAL FUNCTIONS.

The operation of a jail by a county is a governmental function (MCL 45.16, 51.75; MSA 5.291, 5.868).

3. GOVERNMENTAL IMMUNITY — CITY POLICE FORCES — GOVERNMENTAL FUNCTIONS.

The operation of a city police force is a governmental function.

4. TORTS — NEGLIGENCE — INTENTIONAL TORTS — PLEADING.

The mere fact that a plaintiff alleges that a defendant intentionally failed to take appropriate action does not convert a claim from one of negligence into one of intentional tort.

5. NEGLIGENCE — WILFUL AND WANTON MISCONDUCT.

Wilful and wanton misconduct is made out only if the conduct alleged shows an intent to harm or, if not that, such indifference to whether harm will result as to be the equivalent of a willingness that it does.

6. TORTS — ACTS OF OMISSION — INTENTIONAL TORTS.

Acts of omission generally are not intentional torts.

7. CIVIL RIGHTS — MUNICIPAL CORPORATIONS — RESPONDEAT SUPERIOR.

A municipality cannot be found liable for deprivation of civil rights under 42 USC 1983 on a respondeat superior theory; the municipality must be sued directly and liability must be based on an official policy.

8. CIVIL RIGHTS — CAUSE OF ACTION — STANDARD OF PROOF.

Proof of mere negligence is insufficient to give rise to liability for deprivation of civil rights under 42 USC 1983; the applicable standard of proof is deliberate indifference, gross negligence, or recklessness.

9. SHERIFFS AND CONSTABLES — DEPUTY'S MISCONDUCT — SHERIFF'S LIABILITY.

A sheriff is not liable for the actions of his deputies (MCL 51.70; MSA 5.863).

10. GOVERNMENTAL IMMUNITY — GOVERNMENT EMPLOYEES — TORTS.

Lower level public officials, employees, and agents are immune from tort liability only when they are (1) acting during the course of their employment and acting, or reasonably believe they are acting, within the scope of their authority, (2) acting in good faith, and (3) performing discretionary, as opposed to ministerial, acts.

11. GOVERNMENTAL IMMUNITY — DISCRETIONARY DECISIONS — MEDICAL DECISIONS.

Medical decision-making is inherently a discretionary process;

however, execution of those medical decisions may be a ministerial act.

12. CIVIL RIGHTS — DEPRIVATION OF MEDICAL TREATMENT — DELIBERATE INDIFFERENCE TO MEDICAL NEEDS.

A plaintiff, in order to state a civil rights claim under 42 USC 1983 for deprivation of medical treatment, must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs; allegations of negligence or medical malpractice are insufficient.

13. CIVIL RIGHTS — DEPRIVATION OF MEDICAL TREATMENT — DELIBERATE INDIFFERENCE TO MEDICAL NEEDS.

A medical need is serious for purposes of an action for deprivation of civil rights under 42 USC 1983 if it is one that has been diagnosed by a physician as requiring treatment or it is so obvious that even a layperson would recognize the necessity of medical attention.

14. CIVIL RIGHTS — DEPRIVATION OF MEDICAL TREATMENT — DELIBERATE INDIFFERENCE TO MEDICAL NEEDS.

A defendant must have either intentionally denied or unreasonably delayed treatment of a discomfort-causing ailment or wilfully failed to provide prescribed treatment without medical justification to have acted with deliberate indifference for purposes of deprivation of civil rights actions brought under 42 USC 1983.

*Ernest L. Jarrett,* for plaintiff.

*Robert E. Helm,* Assistant City Attorney, for the City of Saginaw and Officer John Engels.

*Borrello, Thomas & Jensen, P.C.* (by *Peter C. Jensen*), for Saginaw County, Saginaw County Sheriff's Department and individual Saginaw County Sheriff's Deputies.

Before: ALLEN P.J., and GRIBBS and T. GILLESPIE,* JJ.

PER CURIAM. Plaintiff Barbara Hill, as personal

* Circuit judge, sitting on the Court of Appeals by assignment.

representative of the estate of Marcellus Moton, brought this wrongful death action against defendants in Saginaw Circuit Court. Plaintiff's second amended complaint contained counts of gross negligence (Count I), violation of 42 USC 1983 (Count II), and loss of consortium (Count III). On February 8, 1983, the trial court granted the Saginaw County Sheriff's Department's motion to dismiss. On May 6, 1983, the trial court granted summary judgment to the City of Saginaw, the Saginaw Police Department, and the County of Saginaw as to Counts I and II of plaintiff's complaint. On September 28, 1983, the trial court granted summary judgment to defendants Joseph Juras, Walter Ostrander, Dennis Martin, Jeanette Blacksher, Mary Niswander and Kenneth Nolan, who were deputies of the Saginaw County Sheriff's Department. On October 31, 1983, the trial court ordered that the action against Patrick Rudy be dismissed per stipulation of the parties, that Counts II and III against all remaining defendants be dismissed, and that Count I be dismissed against defendant John Engels. Plaintiff appeals as of right. We affirm.

On August 30, 1980, plaintiff's decedent Marcellus Moton was operating his automobile in the City of Saginaw, Saginaw County. Moton's vehicle struck first a parked car and then an automobile stopped at a stop sign.

Officer John Engles' deposition testimony included the following. Immediately after the second collision occurred, defendants John Engles and Patrick Rudy of the Saginaw Police Department arrived at the scene of the second accident and performed an initial investigation. Engles went to Moton's car immediately. The car's doors were locked, and Engles could see Moton sleeping on the front seat. Moton had no obvious injuries and there was no blood, so Engles attended to the

other parties at the scene who were visibly injured.

Five to six minutes after he had arrived at the scene, Engles succeeded in opening the door of Moton's vehicle. It was obvious, according to Engles, that Moton had been drinking heavily, and Officer Engles noted that Moton was a "classic example of a DUIL." Moton did not appear to be injured and he walked back to the patrol car with Engles, but kept falling asleep while being questioned. Engles asked Moton if he wanted to go to the hospital or take a Breathalyzer test; Moton understood and indicated that he wanted to take the Breathalyzer test.

Moton was arrested for driving under the influence of intoxicating liquor, failure to produce an operator's license, and failure to control a motor vehicle. The Breathalyzer test showed that Moton had a blood alcohol level of 0.19 percent, and he was taken to the county jail. Engles indicated that he could have taken Moton to a hospital, but that he did not do so because there was no outward manifestation of injury and Moton had said he was not hurt.

Plaintiff filed the affidavit of Lutitia Tillman in support of her objections to defendants' motion for summary judgment. A careful reading of the affidavit reveals that Tillman did not directly contradict the deposition testimony of Officer Engles. Tillman's affidavit stated that she arrived at the scene shortly after the accident and that Moton told *her* that he was hurt. She noted that she never heard the officers ask defendant if he was injured or if he needed medical attention. Tillman also indicated that Moton said he could not stand up and that he was not walking erect when the officers escorted him to their police car.

This affidavit did not raise a genuine issue of material fact, because it did not directly contradict the deposition testimony of Officer Engles. The fact that Moton did not stand up straight is consistent with Engles' testimony that Moton was drunk. Since Tillman was not with Moton and Officer Engles in the patrol car, she would not have heard Engles ask Moton if he wanted to go to the hospital or take a Breathalyzer test. Tillman also stated that Moton was not drunk, but plaintiff now concedes that Moton was intoxicated when the accident occurred. Consequently, Tillman's affidavit did not prevent the grant of a summary judgment to defendants.

At the Saginaw County Jail, defendants Engles and Rudy surrendered custody of Moton to Corporal Joseph Juras of the Saginaw County Sheriff's Department. Defendants Walt Ostrander, K. Nolan, D. Martin, Jeanette Blacksher and M. Niswander allegedly shared custody of Moton until he was released from custody approximately ten hours later.

The next day, plaintiff's decedent was admitted to Saginaw Osteopathic Hospital, and surgery was performed to repair a torn colon. He died on September 1, 1980. The deposition of Royce Skaggs, D.O., a pathologist at the hospital, indicated that the cause of Moton's death was adult respiratory distress syndrome, which follows trauma. An autopsy performed by Skaggs revealed that there was no outside evidence of trauma except the marks from the operation and that there was nothing which could be externally observed that would indicate that plaintiff's decedent had a ripped colon. Skaggs noted that symptoms of this injury might not be apparent; falling asleep in midsentence would not likely be a symptom of the injury. He opined that a blood alcohol level of 0.19

percent, however, could cause one to fall asleep and have trouble communicating.

The deposition of Jay K. Harness, M.D., the Director of the Office of Health Care of the Michigan Department of Corrections, who helped write the AMA Standards for Health Care in Jails, indicated that the procedures in this case complied with the spirit of those standards. He also noted that the immediate effects of an injury like the one Moton suffered may be nothing at all and that it would take eight to twelve hours for bacteria to grow and an infection to develop. Only at that time would the patient feel abdominal pain. Harness stated that even a trained person would have trouble diagnosing the injury, because it would take time to manifest itself. He opined that it was not at all unusual that the arresting and booking officers would not have recognized Moton's injury.

Plaintiff contends that the trial court erred when it granted summary judgment to the City of Saginaw and the County of Saginaw, because MCL 691.1407; MSA 3.996(107) did not preclude recovery on Count I of plaintiff's complaint and plaintiff had alleged a cause of action under 42 USC 1983 in Count II of her complaint.

First, plaintiff argues that the trial court erred when it permitted the county to orally join in the city's motion for summary judgment. Plaintiff concedes that it may be proper to bring such a motion during a hearing, but contends that defendants did not state "with particularity the grounds therefor," as required by GCR 1963, 110.2(1), now MCR 2.119(A)(1)(b). That contention lacks merit, however, because the statement of grounds requirement applies "unless [the motion is] made during a hearing or trial."

Next, plaintiff contends that her claims of negligence and loss of consortium were not barred by

governmental immunity, because (1) transporting or obtaining appropriate medical attention for an injured person is not a governmental function, (2) the defendants' failure to obtain medical attention was intentional, willful, and wanton, and (3) omissions can never be activities in the exercise or discharge of a governmental function. She also asserts that she stated a claim against the county and the city under 42 USC 1983, because her complaint alleged facts which would result in defendants' being directly, rather than vicariously, liable. Thus, plaintiff contends that the trial court's opinion and order must be reversed. We disagree.

First, we consider plaintiff's contention that the defendants' activities were not in the exercise or discharge of a governmental function. Governmental agencies are immune from tort liability only when they are engaged in the exercise or discharge of a governmental function, *Ross v Consumers Power Co (On Reh)*, 420 Mich 567, 608; 363 NW2d 641 (1984); MCL 691.1407; MSA 3.996(107). The broad grant of immunity from tort liability provided by MCL 691.1407; MSA 3.996(107), when considered along with the four narrowly drawn exceptions contained in the statute, suggests that the Legislature intended that the term "governmental function" be interpreted in a broad manner, *Ross, supra,* p 618. Therefore, the Supreme Court has concluded that a governmental function is any activity which is expressly or impliedly mandated or authorized by constitution, statute, or other law, *Ross, supra,* p 620.

In her second amended complaint, plaintiff alleges that the Saginaw Police Department "is the primary law enforcement agency serving the City of Saginaw" and that it exists "by virtue of the constitution and statutes of the State of Michigan

and the charter of the City of Saginaw." She makes similar allegations regarding the county sheriff's department.

We agree that the County of Saginaw has a statutory duty to operate and maintain a jail pursuant to MCL 51.75; MSA 5.868 and MCL 45.16; MSA 5.291. Thus, the operation of a jail by a county is a governmental function. We also conclude that the operation of a police department is a governmental function, see *Dickey v Fluhart,* 146 Mich App 268, 275-276; 380 NW2d 76 (1985), and *Cook v Detroit,* 125 Mich App 724, 733; 337 NW2d 277 (1983). Consequently, plaintiff's argument that the city was not engaged in a governmental function must also be rejected.

Next, plaintiff argues that, even if defendants were engaged in governmental functions, they were committing intentional torts and thus were not protected by immunity. However, the mere fact that plaintiff alleged that defendants intentionally failed to take appropriate action does not convert a claim from one of negligence into one of intentional tort, *Williams v Michigan,* 144 Mich App 438, 441; 376 NW2d 117 (1985), lv den 424 Mich 853 (1985). Willful and wanton misconduct is made out only if the conduct alleged shows an intent to harm or, if not that, such indifference to whether harm will result as to be the equivalent of a willingness that it does, *Williams v City of Cadillac,* 148 Mich App 786, 793; 384 NW2d 792 (1985). Generally, where the act complained of is one of omission rather than commission, it is not an intentional tort, *Hobrla v Glass,* 143 Mich App 616, 629; 372 NW2d 630 (1985). Defendants' alleged failure to notice that plaintiff's decedent had internal injuries was an omission, and it did not rise to the level of willful and wanton misconduct. On these facts, plaintiff cannot avoid the bar of

immunity by way of the intentional tort exception to the governmental immunity act.

We note that plaintiff's additional contention that omissions can never be considered to be in the exercise or discharge of a governmental function misconceives the test set out in *Ross.* As noted in *Ross,* pp 620-621, that test is broad and encompasses most of the activities undertaken by governmental agencies.

Next we consider plaintiff's contention that she stated a claim against the city and the county under 42 USC 1983. A municipality cannot be found liable under 42 USC 1983 on a respondeat superior theory. Rather, the municipality must be sued directly and liability must be based on an official policy, *Moore v Detroit,* 128 Mich App 491, 499; 340 NW2d 640 (1983), lv den 422 Mich 891 (1985). Mere negligence is insufficient under § 1983; the applicable standard is deliberate indifference, gross negligence, or recklessness, *Moore, supra,* p 502.

It is undisputed that the Saginaw police department had a policy of taking a person to the hospital if there was any reason to believe that he or she was injured or ill and that the jail had a policy of receiving and screening inmates for medical problems which complied with the spirit of AMA standards for health care in jails. Consequently, we conclude that the plaintiff has failed to adequately allege or to show that either the city or the county had the requisite policy or custom of depriving arrested persons or inmates of their constitutional rights or that they evinced deliberate indifference to plaintiff's decedent. The trial court did not err when it granted summary judgment to the county and the city on Count II of plaintiff's complaint.

The second issue raised by the plaintiff concerns

the trial court's dismissal of her action against the Saginaw County Sheriff's Department. First, the trial court addressed plaintiff's argument that the Sheriff's Department's "motion to dismiss" was one for accelerated judgment and that it should have been rejected as untimely because it was brought later than that defendant's first responsive pleading. See GCR 1963, 116.1. The trial court ruled that plaintiff had a duty to plead facts in avoidance of immunity and that she had not done so. Consequently, the court considered the motion on its merits.

We conclude that the trial court's ruling was correct. GCR 1963, 116.1 did not expressly address motions brought on the basis of governmental immunity. When plaintiff brought this action, there was support in the case law for the proposition that immunity was not an affirmative defense. See *Ross, supra,* p 621, n 34.[1] Next, the trial court ruled that the sheriff was not liable for the actions of his deputies, and it granted the motion to dismiss the claims against the sheriff's department. That ruling was not error. See *Bayer v Macomb Co Sheriff,* 29 Mich App 171; 185 NW2d 40 (1970), *Lopez v Ruhl,* 584 F Supp 639, 648-649 (WD Mich, 1984), and MCL 51.70; MSA 5.863.

Third, plaintiff contends that the trial court erred by granting summary judgment to the individual defendants on her claims of gross negligence and loss of consortium. Lower level officials, employees, and agents are immune from tort liability only when they are (1) acting during the course of their employment and acting, or reasonably believe they are acting, within the scope of

---

[1] We note that MCR 2.116(C)(7) includes "immunity granted by law" as a ground for summary disposition which must be raised in a party's first responsive pleading, MCR 2.116(D)(2). Thus, under the new court rules, a party may have to raise the defense of governmental immunity in a timely manner.

their authority, (2) acting in good faith, and (3) performing discretionary, as opposed to ministerial, acts, *Ross, supra,* p 633-634.

Plaintiff did not allege and does not contend that the individual defendants were not acting during the course of their employment and in the scope of their authority or that they were not acting in good faith. Medical decisions are discretionary, although execution of these decisions may be ministerial, *Tobias v Phelps,* 144 Mich App 272, 281; 375 NW2d 365 (1985), lv den 424 Mich 859 (1985). A decision that a person is not in need of medical care is also discretionary. Consequently, none of the individual defendants can be sued for their failure to discern the medical needs of plaintiff's decedent.

Plaintiff also argues that the individual defendants were liable under 42 USC 1983. We disagree. In *Tobias, supra,* we noted:

> In order to state a claim under 42 USC 1983 for deprivation of medical treatment, the plaintiff "must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs". . . . Allegations of negligence or medical malpractice are insufficient. . . . *A medical need is serious if it is one that has been diagnosed by a physician as requiring treatment or it is so obvious that even a layperson would recognize the necessity of medical attention.* . . . To have acted with "deliberate indifference", defendants must have either intentionally denied or unreasonably delayed treatment of a discomfort-causing ailment or wilfully failed to provide prescribed treatment without medical justification. . . . In *Westlake v Lucas,* 537 F2d 857, 861 (CA 6, 1976), the court held sufficient to withstand a motion for dismissal plaintiff's allegations "that he was forced to endure a period of intense discomfort because his pleas for medical assistance went unheeded". [144

Mich App 277-278. Citations omitted; emphasis added.]

In this case, summary judgment was proper. The deputies and the police officers were not deliberately indifferent to Moton's medical needs. Moton denied that he was injured and refused treatment. Medical testimony indicated that, given the type of injury he had, he probably would not have had symptoms until eight to twelve hours after the accident; he was released from the jail after less than ten hours. The trial court did not err when it concluded that plaintiff could not recover from the individual defendants on Count II of her complaint.

Affirmed.